# SUPREME COURT

OF THE

STATE OF IOWA

AT ·

## DES MOINES, MAY AND SEPTEMBER TERMS, 1918

---

CHARLES G. REEDER, Trustee, Appellee, v. HERMAN E. REEDER, Appellant.

**WILLS:** Trusts—Power to Sell. A devise to trustees to hold and
1  manage the property for a named purpose, with a direction that,
when said purpose is fulfilled, "the property so held to be sold,"
and the proceeds divided among named remaindermen, implied-
ly invests the surviving trustee with power to do the selling.

**TRUSTS:** Bonds. A bond is not essential to the existence of a
2  trust.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

JUNE 27, 1918.

ACTION to construe a will and to determine the power
of the trustee named in the will. Opinion states the facts.
—*Affirmed.*

*Crissman & Linville,* for appellant.

*M. D. Porter,* for appellee.

GAYNOR, J.—On the 8th day of April, 1898, one P. W. Reeder died testate, leaving surviving him a wife and three sons, Charles G. Reeder, plaintiff herein, George K. Reeder, and Herman E. Reeder, the defendant. His will provided that all his just debts be first fully paid and satisfied, and then, after making some bequests, disposed of the remainder as follows:

1. WILLS : trusts : power to sell.

"All the remaining portion of my property both real and personal, possessed at the time of my death, shall be turned over to my wife and my son, Charles G. Reeder, they to act as trustees, and as such to hold and manage the same for the benefit and support of my wife during her natural life the same as if I were living, and upon her death the property so held to be sold, whenever a sale can be made without sacrifice of price, and the proceeds distributed in equal portions, share and share alike, among my three sons."

In the will, his widow and the said Charles G. Reeder were named as executors, and as such, qualified and gave bond, and entered upon the discharge of their duties. The widow elected to take under the will. On the 2d day of March, 1903, the widow and Charles G. Reeder made their report to the court, as executors of the will, and were discharged; and on the same day, the court confirmed their appointment as trustees under the will, and as such they continued to act until the death of Sophia K. Reeder, the widow, in 1914, and Charles has continued to act as trustee ever since. All the real estate has been sold, except Lot 1 in Block 27, and the adjoining 40 feet of Lot 2 in Block 27, in Cedar Rapids, Iowa; and the plaintiff claims to have an advantageous offer for this property.

It appears that doubts have arisen as to the right of this plaintiff, as trustee, to sell the real estate. This action

is, therefore, brought to construe the will, and to have it judicially determined whether the will gave to him the power which he has exercised, and is now seeking to exercise, in the disposition of the real estate owned by testator at the time of his death; whether, under the will, as surviving trustee, he is invested with power to sell the real estate and distribute the proceeds as provided in the will. The court below adjudged that all the acts of Sophia Reeder and the plaintiff, as trustees, and all acts in relation to the real estate done after the death of Sophia by the plaintiff as surviving trustee, were within the powers granted them in the will, and ratified and confirmed the same, and further ordered, adjudged, and decreed that the plaintiff, as surviving trustee, was invested with the power to sell the remaining real estate and to distribute the proceeds as provided in the will. From this decree, one of the sons, Herman E. Reeder, appeals.

P. W. Reeder was, at the time of his death, the owner of the land in controversy. He had a right to make such disposition of it as to him seemed best. He gave to his wife a life estate in the property, appointed his wife and his son trustees to hold and manage it during her life, the proceeds to be applied to the support and maintenance of the wife during her life. He further ordered that, upon the death of his wife, the property should be sold and the proceeds divided among his children. He did not by name designate the person intended by him to make the sale. He seems to have had special confidence in the son Charles G., and gave him the power, in connection with the wife, to hold, control, and manage the entire estate for the use and benefit of the wife during her life. He ordered the property sold, upon her death, and the proceeds divided. He made no specific devise of the remainder of the property. His intent was that the title to the property should not pass to his sons, and that someone having power to pass title should sell.

In construing a will, it has been frequently said that the court must look for the intention of the testator. The possession and management of this estate were given to the wife and to Charles G., to have and to hold during her life. Upon her death, her life estate ceased. Upon her death, all power to act further as trustee in the management of the property ceased. No one, then, of the parties named as trustee, was in the mind of the testator on whom the duty of selling the property and dividing it among the heirs could rest, except Charles G. The property was to be sold by someone. He did not invest this power in his executors, though he named executors in the will. The will, though not aptly worded, conveys to the mind the thought expressed, thus:

"I give to my wife a life estate in the property. I appoint my son Charles G., in connection with my wife, trustee, to manage and control the property during her life, for her use and benefit. Upon her death, I direct my son Charles to dispose of the property and divide the proceeds among my sons."

We think there was power given to Charles to carry out this last provision of the will, after fully performing all the conditions imposed upon him during the life of his mother. It is true that power limited to the management and control of the estate does not include power to sell. This power must be found in the will, either expressly given or by necessary implication. We think the manifest intention of the testator is that the trustee to whom the control and management was given, was the one in whom the testator intended to vest the power of sale and distribution.

Where, in lieu of a distribution of the property held by a trustee, a direction is given that the property be sold and the proceeds distributed, there is implied a power, in the very direction so given, to sell and distribute the proceeds, to the end that the purposes of the will may be made effectual. No

express words are necessary to create a trust. No technical language is necessary. It is sufficient if the intention of the testator to create a trust is sufficiently evidenced in the will.

Upon reading this will, we cannot divest our minds of the thought that it was the purpose of the testator to make a complete and full disposition of all his property. He appointed his wife and Charles trustees of the property, to manage and control it during her life for her use and benefit. investing her with a life estate in the property, the property itself, however, to be held, controlled, and managed by the trustees; and he provided that, upon the death of the wife, for whose benefit it was held during her life, it should be sold. The thought suggested is of a continuing power upon the death of the wife to carry out the further provisions of the will as trustee; to sell and divide the proceeds. The power of sale being vested in the trustee, there is no need of the intervention of any court to enable him to execute the trust. The power to act is found in the will. We cannot believe that it was the purpose of the testator that the executors named in the will should have this power, for the reason that it is manifest that the power of sale could not be exercised until the death of the wife,—until the termination of the life estate. In the will itself, the office of executor and the office of trustee are clearly differentiated. Upon the completion of the duties of the executors, they filed their report and were discharged. At the same time, application was made for a confirmation of the trusteeship, and it was confirmed. No bond was required by the will, to be given. A bond was not essential to the existence of the trusteeship. It might well have been required. Upon proper showing, it might be required. The power to act as trustee does not come from the court, but is found in the instrument creating it; and we think it is found in this instrument.

2. TRUSTS : bonds.

Construing this will as we do, we think the judgment of the district court was right, and must be—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.