OVERTON and others, Executors, Appellants, vs. WISCONSIN TAX COMMISSION, Respondent.

*April 6—May 12, 1931.*

For the appellants there was a brief by *Sanborn, Lamoreux & Pray* of Ashland, and oral argument by *Allan T. Pray.*

For the respondent there was a brief by the *Attorney General, F. C. Seibold,* assistant attorney general, and *G. Arthur Johnson,* district attorney of Ashland county, and oral argument by *Mr. Seibold.*

OWEN, J. It appears that Joseph W. Cochran, a resident of Ashland county, in this state, died testate on January 27, 1914. James B. Overton, Mary Cochran Overton, and Joseph Edwin Cochran were appointed, and qualified as, executors of his last will and testament. Shortly thereafter they entered into an agreement with the widow of the testator whereby they agreed to pay her an annuity of $225 per month during her lifetime. To provide for the payment of said annuity the said executors, on the 18th day of May, 1914, executed a written instrument transferring to the Northern Central Trust Company of Williamsport, Pennsylvania, certain property specified in said agreement, with certain powers of sale, management, and disposition. The said Trust Company agreed to pay $225 per month to the widow out of the income arising from the property so transferred. The property so transferred consisted of 274 shares of the Williamsport Wire Rope Company, a corporation of the state of Pennsylvania.

In 1924 the Williamsport Wire Rope Company declared a stock dividend, of which 548 shares was paid to the Trust

Company upon the 274 shares transferred to it by the executors. The executors made a return of income accruing to them during the year 1924 to the income tax assessor of Dane county. As a part of the return the executors mentioned this stock dividend, in the form of a memorandum, stating they did not know whether it was assessable to them as income or not. Said memorandum stated, in a general way, with fair accuracy, the facts concerning their relation to this stock and the stock dividend. The income tax assessor for Dane county did not assess the stock dividend as income to the executors.

It seems that subsequent to the year 1924 all of the said Williamsport Wire Rope Company stock was sold by the Trust Company, and that in reporting their income for 1927 the executors took or claimed a deduction for losses arising from the sale of the stock. This report was made to the income tax assessor for Ashland county. Upon an investigation of prior income tax returns made by the executors, the income tax assessor of Ashland county discovered that no income tax had been assessed against the executors because of the stock dividend paid by the Williamsport Wire Rope Company to the Trust Company in 1924. Upon a consideration of the matter he concluded that an income tax should have been assessed against the executors because of said stock dividend in 1924, as well as upon a cash dividend paid to the Trust Company in 1925, upon which no income tax had been assessed or paid. He therefore assessed against the executors an additional income tax in 1929, upon the stock dividend received by the Trust Company in 1924, and upon a cash dividend paid to it in 1925. Upon appeal to the county board of review this additional tax was set aside. Upon appeal to the Tax Commission the action of the board of review was reversed and the assessment made by the county assessor of incomes was reinstated. Upon appeal

from the Tax Commission to the circuit court for Ashland county the action of the Tax Commission was affirmed.

The appeal to this court presents the rather narrow question of whether the executors or the Trust Company held the legal title to the stock transferred by the agreement of May 16, 1914. The appellants contend that by that instrument the legal title was vested in the Trust Company, which was a corporation beyond the jurisdiction of the state of Wisconsin, and that the state of Wisconsin could not impose an income tax upon the transaction. The respondent contends that the instrument of May 16, 1914, simply amounted to a pledge of the stock transferred for the purposes set forth in the agreement, that the legal title to the stock was at all times in the executors of the estate, and that the stock dividend constituted income in their hands subject to an income tax, as two of the executors were residents of this state.

The agreement provided that the executors shall, contemporaneously with the agreement, deliver to the Trust Company 274 shares of the capital stock of the Williamsport Wire Rope Company, "together with the proper instrument or instruments in writing authorizing the Trust Company to vote said stock and collect the dividends thereon during the life of this agreement," which dividends were to be used in payment of said monthly sum to the widow. It was further provided that if within a period of five years from the date of the agreement the executors did not deposit with the Trust Company other security satisfactory to the Trust Company for the purpose of carrying out this trust, then and in such case the Trust Company, upon sixty days' notice to the executors, might sell said 274 shares at any price satisfactory to it not less than $60,000 and use the proceeds thereof for the purpose of carrying out the terms of the trust, and in doing so might invest and reinvest the said sums of money in such securities as to them may seem best without regard

to whether or not such securities are legal securities under the laws of the state of Wisconsin and Pennsylvania, and in case securities other than those hereby deposited are at any time deposited under the terms of this agreement the right of sale and reinvestment of the proceeds of said securities by the Trust Company shall not be limited by the law regarding legal investments either in Pennsylvania or in Wisconsin. It was further provided that if the income from the trust fund created by the agreement should become insufficient to pay the amount due monthly to the widow, the executors should pay to the Trust Company an amount sufficient to meet the payments so to be made, and in default thereof the trustee should have the right to use so much of the principal from time to time as shall be necessary to pay the widow under her agreement with the executors. The Trust Company agreed that upon the death of Mary Mitchell Cochran, or upon the sooner termination of the agreement, it will pay and return to the legal representatives of the estate of said Joseph W. Cochran, deceased, the balance of the principal of said trust fund that may be in its hands at that time. It is also provided that the executors shall have the right at any time to substitute for said 274 shares of the capital stock of the Williamsport Wire Rope Company such other securities as shall be satisfactory to the Trust Company.

Certainly the general tenor of this agreement indicates a trust rather than a pledge. The terms "trust" and "trust fund" are frequently used throughout the instrument. However, the name given the instrument by the parties does not necessarily indicate its character. Ordinarily a pledge is a deposit made to secure an indebtedness. The pledgee acquires the custody of and a lien upon the property pledged. The legal title remains in the pledgor. The pledgee acquires no property rights in the thing pledged other than the lien until a default, when he may sell the pledged property in the

manner provided by law or the pledge agreement. A right to dispose of the property and to invest and reinvest the proceeds as the pledgee sees fit is entirely inconsistent with the idea of a pledge. Such authority or dominion over the property bespeaks a greater interest in the property than that of a mere lien or equitable title. The power conferred upon the Trust Company in this case to sell the original stock pledged, although there are some limitations upon that right in the way of notice to the executors under the will, is a power which does not ordinarily belong to a pledgee. The right to invest and reinvest the proceeds confers upon the Trust Company a power to exercise which legal title is necessary, a power inconsistent with a lesser title. The right to vote the stock and collect the dividends is a right incident to ownership, although this right may be conferred upon a pledgee.

It is generally stated that a trustee takes a legal title when the trustor imposes upon the trustee any trust or duty the performance of which requires that the legal estate shall be vested in him. "So the trustee takes the legal title by implication where he is required to hold it for a long period in order to pay specific legacies, including annuities, to a large number of persons for life, and his duties require him to keep the estate, real and personal, so invested as to be not only safe but productive. And the power to sell an estate in fee invests the trustee with the legal title in fee, even where the trust to sell is on a contingency." 26 Ruling Case Law, p. 1260.

In *Robinson v. Pierce,* 118 Ala. 273, 24 South. 984, 45 L. R. A. 66, at p. 72, we find it stated that "it will not be questioned that a power to sell the estate, in fee, conferred upon the trustee, by the terms of the trust, invests him with the legal title in fee; for the principle is not only self-evident, but it is so expressly declared in all authorities upon the sub-

ject. And this is so, even where the trust to sell is on a contingency. 1 Lewin, Trusts, 213 (3)."

It cannot be questioned that the instrument under consideration gives to the Trust Company the power to sell the original stock transferred, and to invest and reinvest the proceeds at its own discretion, and this without regard to whether the securities in which the proceeds may be invested are legal securities in Wisconsin or in Pennsylvania for the investment of trust funds. This is a power quite inconsistent with anything less than the legal title. It seems plain that the instrument is just what the parties called it and just what they supposed it to be, and that the result was to create a trust which necessarily divested the executors of the legal title. *Warsco v. Oshkosh S. & T. Co.* 183 Wis. 156, 196 N. W. 829. This being so, the Trust Company became the legal owner of the stock dividend. It was not paid to the executors, it did not come into their hands, and they had no legal right to it. They were not subject to an income tax by reason of this stock dividend under the laws of the state of Wisconsin. This is necessarily true, also, of the cash dividend paid by the Williamsport Wire Rope Company to the Trust Company in 1925. It follows that the income tax imposed by the assessor of incomes upon the executors in 1929 was improper, and that the order of the Tax Commission affirming that assessment should be set aside.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment vacating and setting aside the order of the Wisconsin Tax Commission.